UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| EDUARDO RIVAS FERNANDEZ, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>**Plaintiff,**<br><br>v.<br><br>**BLUSOURCE, LLC,**<br><br>**Defendants.** | CIVIL ACTION<br><br>FILE NO.: 1:21-cv-00404-LCB-JLW |

**MEMORANDUM IN SUPPORT OF MOTION TO APPROVE SETTLEMENT AGREEMENT**

Plaintiff Eduardo Rivas Fernandez (Fernandez) and the opt-in Plaintiffs identified in Exhibit A to the Settlement Agreement (collectively Plaintiffs) (attached as Exhibit 1), with the consent of Defendant Bluesource, L.L.C., move this Court for an order approving the parties' Settlement Agreement for state and federal wage and hours claims, which includes a service award and an award of attorneys' fees and costs. *Id.* In support of this motion, Plaintiffs would show the Court as follows:

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

The cases arise in connection with relief work performed after Hurricanes Irma and Maria devastated Puerto Rico and the Virgin Islands. FEMA and other governmental entities implemented programs to provide for aid and repairs. Louis Berger Group was awarded

1

multiple contracts for power generation and repair pursuant to those programs and subcontracted out the work for many of its obligations. These subcontractors hired workers in Puerto Rico and the Virgin Islands to perform repairs, including working as drivers, laborers, carpenters, and mechanics, performing inspection, repair, and preventive and corrective maintenance for diesel or electric generators. The workers they hired allege they regularly worked in excess of 40 hours per week, but were not paid overtime or other benefits required by state and federal law.

The action against Bluesource originated in New Jersey. A plaintiff named Ivan Ojeda filed a case against Louis Berger and two of its subcontractors on December 14, 2018. *See Ojeda v. Berger Group (Domestic), Inc., et al.*, Case No. 2:18-CV-17233(KM)(JBC) (D.N.J. filed Dec. 24, 2018) at Dkt. No. 1. On March 19, 2019, a First Amended Complaint was filed adding Defendant Bluesource, and other subcontractors as defendants. *Id.* at Dkt. No. 50. After motions to dismiss by Bluesource and others, the plaintiffs amended the complaint again, this time adding a named plaintiff for every defendant. Those plaintiffs(including Fernandez) brought this class and collective action on behalf of relief workers who were paid a day-rate or hourly rate plus fringe benefits by Louis Berger and its subcontractors in violation of the Fair Labor Standards Act (FLSA) and the laws of Puerto Rico and the U.S. Virgin Islands. *Id.* at Dkt. No. 235. They allege Louis Berger and its subcontractors jointly employed them and owe them wages. *Id.*

For its part, Bluesource disputed it violated any law, and contested that the District of New Jersey had personal jurisdiction over it. It moved to dismiss pursuant to Rule 12(b)(2). This motion was granted in part, and the claims of Plaintiff Eduardo Rivas Fernandez and the

other opt-ins who worked for or through Bluesource were transferred to this District. The Parties then engaged in informal discovery regarding the claims and defenses at issue, certification, and damages. Ex. 2 Schreiber Declaration), at ¶ 13.

On October 20, 2021, the Parties mediated with an experienced wage-and-hour mediator, Michael Russell. Following mediation, the Parties were able to reach an agreement to settle this matter. After reaching a settlement in principal, the Parties engaged in negotiations relating to the specific terms of the Agreement, including allocations for each plaintiff based on their damages, before ultimately finalizing the Settlement Agreement in February of 2022. *Id.* at ¶ 15.

## II. THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT.

Based on the vigorously contested nature of this litigation over an extended period of time, and the quality of the settlement, this Settlement is a reasonable resolution of a *bona fide* dispute in contested litigation. The Parties have entered into their Settlement Agreement as a compromise to avoid the risks, distractions, and costs that will result from further litigation.

### A. Standard for Settlement Approval

"Under §216(b), when an action is brought by an employee against his employer to recover back wages, the proposed settlement must be presented to the district court for review and determination that the settlement is fair and reasonable." *Kirkpatrick v. Cardinal Innovations Healthcare Solutions*, 352 F. Supp. 3d 499, 502 (M.D.N.C. 2018) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir 1982)). "To approve an FLSA settlement, the

court must determine whether it is a fair and reasonable compromise of disputed claims and issues arising from a bona fide dispute raised pursuant to the FLSA." *Id.*

"[D]istrict courts in this Circuit evaluate whether a settlement reflects 'a fair and reasonable compromise of a bona fide dispute over FLSA provisions' by applying the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Hood v. Uber Technologies, Inc.*, 1:16-cv-998, 2019 WL 93546, at *4 (M.D.N.C. Jan. 3, 2019) aff'd, 780 Fed. Appx. 25 (4th Cir. 2019). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of a settlement." *Myers v. Loomis Armored US, LLC*, 18-CV-00532-FDW-DSC, 2020 WL 1815902, at *5 (W.D.N.C. Apr. 9, 2020) (citing *Lynn's Food Stores*, 679 F. 2d at 1353-54). "There is a strong presumption in favor of finding a settlement fair." *Kirkpatrick*, 352 F. Supp. 3d at 503.

### B. A *Bona Fide* Dispute Exists

"A bona fide dispute is one in which there is some doubt whether the plaintiff would succeed on the merits at trial." *Kirkpatrick*, 352 F. Supp. 3d at 502 (quoting *Hall v. Higher One Machs., Inc.*, No. 5-15-CV-670-F, 2016 WL 5416582, at *6 (E.D.N.C. Sept. 26, 2016)). Here, the Settlement Agreement resolves a bona fide dispute. In the instant case, the Parties contested the claims and defenses asserted. Plaintiffs alleged they were misclassified as independent contractors, and either paid a day rate regardless of the number of hours worked during a week, or paid an hourly rate plus fringe benefits while staffed to Louis Berger. Bluesource admitted that it employed approximately 250 workers in Puerto Rico, but denies was an employer to some of the opt-in Plaintiffs in this action. It further alleges its pay practice is fully compliant with applicable law. Bluesource also argues that pursuant to a Department

4

of Labor investigation, some of the Plaintiffs were paid for any back wages due. While there have been few filings in this District, this litigation has been ongoing for more than three years, with the parties extensively involved in discovery related to the claims, underlying work and contracts, and communications. Prior to the filing claims against Bluesource, Plaintiffs' Counsel performed extensive research and investigation regarding the pay practices and potential liability of Bluesource, its connection with Louis Berger, the potential for settlement, and whether Bluesource had acted in good faith (or willfully) in implementing its compensation policy. Ex. 2 at ¶ 12. The Parties worked to resolve various complex, disputed issues, such as issues regarding jurisdiction, identification of potential class members, took depositions, engaged in written discovery, produced hundreds of documents, had multiple discovery disputes, disputed whether certain Opt-in Plaintiffs released Bluesource as part of a Department of Labor (DOL) investigation, and maintained differing views on damage calculations. Bluesource provided contract information, communications, and significant pay data and invoices. Plaintiffs' Counsel reviewed thousands of pages of document production, even though formal discovery has not occurred in this District. *Id.* at ¶¶ 13 – 14.

If this case was not contemporaneously settled, there would undoubtedly be extensive future work to come, including conditional certification and class certification for the other workers sourced to Louis Berger through Bluesource, subpoenas to various subcontractors and Louis Berger itself, dispositive motions, depositions, associated discovery disputes, potential interventions, questions regarding applicability of the FLSA, good faith, willfulness, decertification, pretrial motions, trial, and potential appellate issues. *Id.* at ¶¶ 16 - 18. Accordingly, the Parties engaged in significant work, recognized and appreciated the risks in

proceeding if this case were not settled, and (Plaintiffs in particular) recognized that their settlement represented a compromise of the range and uncertainty of their damages especially considering that certain Plaintiffs entered into a DOL settlement.

This settlement is in the best interest of both Plaintiffs. The Parties disputed whether collective treatment of Plaintiffs' FLSA and state law claims were appropriate in this matter, and whether Plaintiffs were entitled to liquidated damages. If the matter was not resolved by settlement, there is a risk Plaintiffs would be unable to obtain class or collective action, and even if they did, that Bluesource would likely move for decertification. Bluesource denies the class is proper and denies this Court has jurisdiction under the Class Action Fairness Act. These disputes would have been time-consuming and expensive for all Parties, and should Plaintiffs have ultimately prevailed, the additional time prior to Plaintiffs receiving relief, if any, could have been substantial.

### C. The Proposed Settlement is Fair and Reasonable.

"Although the Fourth Circuit has not addressed directly the relevant factors the court should consider when determining whether a FLSA settlement is fair and reasonable, district courts within the circuit have generally considered the fairness factors a court would consider under Federal Rule of Civil Procedure 23(e)." *Kirkpatrick*, 352 F. Supp. 3d at 502 (citing *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010)). These factors include "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiff; (5) the probability of plaintiff's success on the merits[;] and (6) the

6

amount of the settlement in relation to the potential recovery." *Dickey v. R.R. Donnelley & Sons Co.,* 1:18CV920, 2021 WL 1169245, at *2 (M.D.N.C. Mar. 26, 2021). "There is a 'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable." *Kirkpatrick*, 352 F. Supp. 3d at 503. Each of these factors favor settlement here.

### 1. The amount of discovery engaged in by the Parties.

The Parties were well-informed at the time Settlement was reached. Both Parties conducted formal (in New Jersey) and informal discovery regarding the claims and defenses at issue and damages. Throughout this process Plaintiffs' Counsel reviewed an analyzed thousands pages of invoices, pay records, master services agreements, correspondence, and other relevant information. *See Kirkpatrick*, 352 F. Supp. 3d at 503 (finding these factors satisfied where the parties "engaged in significant discovery (including interviewing employees, analyzing pay and time records, reviewing records, and serving and responding to written discovery").

Prior to mediation, the Parties jointly endeavored to obtain sufficient pay data, with Bluesource producing additional records. This discovery enabled the Parties to develop a comprehensive damage model to analyze the claims of the Plaintiffs to complete comprehensive settlement allocations, as well as to determine the likely outcome at trial. *See Hood*, 2019 WL 93546, at *5 (finding this factor satisfied where counsel reviewed an extensive spreadsheet reflecting weekly hourly data for class members). This factor weighs in favor of settlement.

### 2. The stage of the proceedings, including the complexity, expense, and likely duration of the litigation.

The Parties have litigated this matter for more than three years. They engaged in extensive motion practice leading up to transfer to this Court, including multiple dispositive motions. The District of New Jersey saw fit not to dismiss these claims, but to sever and transfer them so that they may be properly pursued against Bluesource. The Parties have numerous disputes to resolve in this forum, including (1) whether the Plaintiffs were properly paid overtime for any hours worked over forty in a workweek after Bluesource altered its pay practice; (2) whether (and which) Plaintiffs' claims were wholly settled by accepting back wages as part of the DOL investigation, (3) whether Bluesource could be held liable for the alleged FLSA violations as a joint employer with Louis Berger (4) whether Bluesource's alleged FLSA violations were made in good faith; (6) whether Bluesource's alleged FLSA violations were willful, and (7) whether the statute of limitations had run on Plaintiffs' claims under the Puerto Rico Wage Payment Statute. Ex. 3 at ¶ 19.

Resolution of each of these issues not only has the potential to eliminate or prejudice the litigation in Bluesource's favor, it would involve extensive additional discovery. *DeHoll v. Eckerd Corp.*, No. 1:18CV280, 2019 WL 3337121, at *2 (M.D.N.C. July 25, 2019) (finding the second factor satisfied where "the parties would incur substantial costs by engaging in discovery on information they both possess"). Additionally, as addressed above, Plaintiffs would pursue class and collective certification, and face the prospects of dispositive motions (regarding employer status, accord and satisfaction, and statute of limitations) and decertification before any resolution is reached. In all, it would like be several more years

8

before Plaintiffs would see results from this litigation, assuming they were successful. This Settlement eliminates real, inherent risks which both sides would bear if this complex litigation continued to resolution on the merits. difficult

### 3. There is no evidence of fraud or collusion.

"[T]here is a presumption that 'no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary.'" *DeHoll*, 2019 WL 3337121, at *2 (citing *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08CV1310(AJT/JFA), 2009 WL 3094955, at *12 (E.D. Va. Sept. 28, 2009). Here, the Settlement was the products of arms' length negotiations among experienced counsel and following mediation before a highly-regarded mediator with wage and hour expertise. *See Hood*, 2019 WL 93546, at *5. The settlement was reached after the Parties engaged in discovery, and after months of additional negotiation to finalize the details. The Parties agree the Settlement Agreement was in no way the product of undue influence, duress, overreaching, collusion or intimidation. *See* Ex. 2 at ¶ 24. This factor supports approval of the Settlement.

### 4. The experience of Plaintiffs' Counsel.

Plaintiffs' Counsel's skill, knowledge, reputation, and experience are well-recognized in FLSA cases and Bruckner Burch PLLC, and Josephson Dunlap, LLP have a national docket of FLSA cases, with litigation across the United States. FLSA collective action cases, such as this one, are the main focus of Plaintiffs' Counsel's docket. Plaintiffs' Counsel's experience has caused it to review and become familiar with a large body of documents and information concerning FLSA litigation, which benefits cases such as this one and maximizes the settlement value of the case. Plaintiffs' Counsel's experience in this field has also resulted in a

familiarity with the evidence and testimony necessary to the successful prosecution of such cases. This factor supports approval of the Settlement.

### 5. The probability of plaintiff's success on the merits and the amount of the settlement in relation to the potential recover.

At least one court in this District has resolved statute of limitations issue for the Puerto Rico state claims against a similar group of Plaintiffs. *See Hernandez-Adorno v. LMD & Assc., LLC*, No. 2:21-CV-1519-DCN, 2021 WL 3472692, at *3 (D.S.C. Aug. 6, 2021). Plaintiffs here face the very real risk of dismissal of part of their claims. They additionally acknowledge Bluesource has a significant chance dismissing some or all of their claims due to the payment of back wages through the DOL investigation. Therefore by settling Plaintiffs avoid the risk of an unfavorable verdict or summary judgment decision.

The Settlements with Bluesource constitutes an outstanding result which is more than fair and reasonable for the Plaintiffs. The Settlement will provide individual settlement payments to the Plaintiffs representing a substantial percentage of their claimed damages as calculated by Plaintiffs' Counsel. Ex. 3, at ¶ 27. The proposed method of allocation (individual payments proportionate to their claimed damages) is fair to all. *See Lazy Oil Co. v. Witco,* 95 F. Supp. 2d 290, 339 (W.D. Pa. 1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D. Ga. 1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of

10

a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted); *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942, 988 (E.D. Tex. 2000) (citing study conducted by the National Economic Research Associates: "the average result achieved for class members was only 7% to 11% of claimed damages."). Under the Settlement, the gross settlement represents approximately 44% of the three-year damages.[1] Ex. 2 at ¶28. The average settlement amount per class member is roughly $1,500. *Id.* The recovery by the Plaintiffs is well within the normal range for settlements of this nature which have been approved by courts nationwide. *Id.* "The Court is 'entitled to rely on the judgment of experienced counsel' to evaluate a proposed settlement, and 'absent fraud, collusion or the like, a court should be hesitant to substitute its own judgment for that of counsel.'" *Hood*, 2019 WL 93546, at *5.

This is an excellent result, which provides Settlement Collective Members a certain, substantial, and immediate payment and averts years of continued complex, time-consuming, and expensive litigation, with no assurance of success. The quality of this result speaks for itself, and no further analysis, or speculation about net expected value, is required. *Wong v.*

---

[1] This is probably much higher if accounting for any DOL settlement offset.

*Accretive Health, Inc.*, 773 F.3d 859, 863-864 (7th Cir. 2014) (where "the settlement was proposed by an experienced third-party mediator after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated" the district court was not required to quantify the net expected value of continued litigation).

### III. THE REQUESTED SERVICE AWARD SHOULD BE APPROVED.

The Parties' Settlement contemplates providing a service award to Named Plaintiff Eduardo Rivas Fernandez for $1,500.00, to acknowledge his time, effort, and risk expended in helping to achieve a successful Settlement.

"Courts around the country have approved substantial incentive payments in FLSA collective actions and other employment-related class actions." *DeWitt v. Darlington Cty., S.C.*, No. 4:11-CV-00740-RBH, 2013 WL 6408371, at *14 (D.S.C. Dec. 6, 2013)(collecting cases); *see Kirkpatrick*, 352 F. Supp. 3d at 507. Service awards or incentive payments are especially appropriate in employment litigation, where 'the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class [as] a whole, undertaken the risk of adverse actions by the employer or coworkers.'" *DeWitt*, 2013 WL 6408371, at *14.

"To determine whether an incentive payment is warranted, the court should consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Hoffman v. First Student, Inc.*, No. CIV. WDQ-06-1882, 2010 WL 1176641, at *3 (D. Md. Mar. 23, 2010)(internal citations omitted); *Kirkpatrick*, 352 F. Supp. 3d at 507-08.

Here, Fernandez took significant actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit to the Plaintiffs. He worked with Plaintiffs' Counsel, providing background information about his employment, Bluesource's policies, and the pay practices at issue here. He risked retaliation from current or future employers and staffing companies for the benefit of all Plaintiffs. His efforts advanced the positions of the entire action and positively contributed to the factual arguments used to obtain the settlement and recovery. For these reasons, a service reward to these individuals is justified under the circumstances of this case.

## IV.  ATTORNEYS' FEES AND COSTS ARE REASONABLE

The FLSA provides in part that "the court shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by defendant, and costs of the action." 29 U.S.C. § 216(b). The Settlement agreed to by the Parties reflect this and rather than engaging in a time consuming and costly fee fight over the amount of attorneys' fees, the parties here were able to reach a resolution of the claim for attorneys' fees and costs.

The FLSA "requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interests taints the amount the wronged employee recovers under a Settlement Agreement." *See Poulin v. General Dynamics Shared Res., Inc.*, No. 3:09-cv-00058, 2010 WL 1813497, at *2 (W.D. Va. May 5, 2010) (quoting *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)). When assessing the fairness of attorneys' fees pursuant to a court-ordered fee award, courts generally rely on the lodestar analysis. *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992). However, assessing the fairness of attorneys' fees that are part of a negotiated FLSA settlement is not identical to the

13

traditional lodestar analysis. *See Devine v. City of Hampton*, 2015 WL 10793424 at *3 (E.D. Va. Dec. 1, 2015). In determining the reasonableness of attorneys' fees in an FLSA settlement, courts should give some deference to the parties' voluntary agreement and use lodestar principals as a cross-check to assess fairness. *Id.*

Here, the parties negotiated at mediation and during subsequent settlement conferences that Plaintiffs' Counsel's attorneys' fees and costs would be set at $54,500.00. The figure for attorneys' fees ($51,560 or 40%) is well in line with awarded attorneys' fees in other similar collective/class action cases alleging the non-payment of overtime under the FLSA. *See, e.g., Dominguez v. Microfit Auto Parts, Inc.,* No. CV CBD-18-0534, 2019 WL 423403, at *7 (D. Md. Feb. 4, 2019) (in settlement for $128,122.49, attorney fee award of $55,000.00, or 40%, represented a "ratio between what Plaintiffs will recover and what Plaintiffs' counsel will be reimbursed is in line with other similar cases"); *see also Gagliastre v. Capt. George's Seafood Rest., LP*, No. 2:17CV379, 2019 WL 2288441, at *5 (E.D. Va. May 29, 2019) ("Fees awarded under "the percentage-of-recovery" method in settlements under $100 million have ranged from 15% to 40%); *Hooker v. Sirius XM Radio, Inc.*, No. 4:13-CV-003, 2017 WL 4484258, at *2 (E.D. Va. May 11, 2017)(TCPA claim; awarding 35% fees); *Winingear v. City of Norfolk, Va.,* No. 2:12CV560, 2014 WL 3500996, at *6 (E.D. Va. July 14, 2014) (awarding 38.44% in fees and costs and noting that "this Court has routinely approved percentage recoveries in FLSA cases approaching forty percent of the total recovery"); *Devine*, 2015 WL 10793424, at *3 (finding 33.98% ($1,189,167.00) in fees and costs on a $3,500,000 FLSA settlement to be reasonable). "The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases." *Jones v. Dominion Res. Servs.*, 601 F. Supp. 2d 756, 758

14

(S.D. W. Va. 2009); *see Myers*, 2020 WL 1815902, at *6 (collecting cases); *see also* David F. Herr, Ann. Manual for Complex Litig. § 14.121 (4th ed. May 2019 Update) (noting that "the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases").

Plaintiffs' Counsel's attorneys' fees are part of the bargained-for settlement. They are not being deducted from the value of the Plaintiffs' damages recovery. *See Dominguez Arteaga v. Ecofoam Insulation & Coating of Charleston, LLC*, No. 9:18-CV-2147-RMG, 2019 WL 6057428, at *2 (D.S.C. Jan. 15, 2019). The Parties agreed to set Plaintiffs' Counsel's fees separately and such agreements are generally respected by the courts. *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."); *Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (holding, in a class action, "the court cannot modify the bargained-for terms of the settlement agreement"); *In re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891, 944 (E.D. La. 2012) ("[T]he Court is not authorized to insist upon changes that, in its judgment, might lead to a superior settlement."), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014), *reh'g en banc denied sub nom. In re Deepwater Horizon—Appeals of the Economic and Property Damage Class Action Settlement*, 756 F.3d 320 (5th Cir. 2014), *cert. denied sub nom. BP Exploration & Prod, Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S.Ct. 754 (2014); *Blanchard v. Forrest*, CIV. A. 93-3780, 1996 WL 28526 (E.D. La. Jan. 23, 1996) (overruling the magistrate's modification to consent judgment because courts lack authority to modify a settlement agreement). "[A]ny process of judicial review and approval of stipulated attorneys' fees in the

event of a settlement of civil rights litigation is more deferential than resolving attorneys' fees in a disputed case." *Melgar v. OK Foods*, 902 F.3d 775 (8th Cir. 2018) (reversing district court's reduction of attorney fees from the agreed-upon settlement amount in an FLSA action). Counsel's fee request should be approved because it is reasonably based on the market rate. Ex. 2, at ¶ 31.

Additionally, Plaintiffs' Counsel spent considerable time researching novel issues, responding to dispositive motions, reviewing over ten thousand pages of records, subpoenaing records from third parties, preparing and taking depositions, reviewing written discovery, numerous hearings, discovery disputes, among others. Ex. 2 at ¶¶ 13 - 19. The New Jersey case has almost 400 ECF entries. *Id.* at ¶ 14.

Plaintiffs' Counsel's costs should also be approved. The FLSA provides for the reimbursement of costs. 29 U.S.C. § 216(b). Courts are empowered to award reasonable out-of-pocket litigation expenses "such as … copying, telephone costs, and necessary travel [which] are integrally related to the work of the attorney" and which attorneys customarily bill to fee-paying clients in the course of providing legal services. *Daly v. Hill*, 790 F. 2d 1071, 1083-84 & n.18 (4th Cir. 1986). The expenses here are those typically billed by attorneys and include court costs, travel, deposition transcripts, and computerized legal research. *See* Ex. 2 at ¶ 30. Costs here total $2,940.00. *Id.* As part of the Settlement, Bluesource covered the cost of mediation. These expenses were reasonable and necessary for the successful prosecution of this litigation. Plaintiffs' Counsel incurred these expenses with the significant likelihood of no recovery. These costs should be approved.

16

## V. CONCLUSION.

The Parties reached the Settlements as the result of contested litigation, and they resolve a *bona fide* dispute. The Parties engaged in lengthy negotiations, analyzed all pertinent information, and resolved the issues between them with the assistance of an experienced wage and hour mediator. The Settlements are eminently fair, reasonable, adequate, and provides both Plaintiffs with significant monetary relief in a contested matter. Finally, the Settlement Agreements fulfill the relevant criteria within this Circuit's multi-factor test. For these reasons, the Court should approve the Parties' Agreements. Accordingly, the Parties ask that the Court dismiss the claims in this lawsuit, brought by Plaintiff on behalf of himself and all others similarly situated, with prejudice in accordance with the Parties' proposed order.

**Dated: February 23, 2022**          Respectfully Submitted,

By: */s/ Christopher Strianese*
**Christopher Strianese**
NC Bar No. 46918
**Tamara Huckert**
NC Bar No. 35348
**STRIANESE HUCKERT, LLP**
3501 Monroe Rd.
Charlotte, NC 28205
Tel: 704-966-2101
chris@strilaw.com
tamara@strilaw.com

**Michael A. Josephson**
State Bar No. 24014780
*(pending pro hac vice)*
**Richard M. Schreiber**
State Bar No. 24056278
*(admitted pro hac vice)*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
rschreiber@mybackwages.com

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
*(pending pro hac vice)*
**BRUCKNER BURCH, PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

On February 23, 2022, I served this document on all parties and/or counsel of record via the Court's ECF filing system in accordance with the Federal Rules of Civil Procedure.

*/s/ Christopher Strianese*
**CHRISTOPHER STRIANESE**

## CERTIFICATE OF CONFERENCE

Plaintiff's Counsel conferred with Bluesource's Counsel, Larry Stine, regarding the relief sought herein, to which Bluesource is unopposed.

*/s/ Christopher Strianese*
**CHRISTOPHER STRIANESE**